UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JACONIAH FIELDS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:20-cv-02455-JMS-MPB |
| ) | |
| ANDREW BAGIENSKI, et al. ) | |
| ) | |
| Defendants. ) | |

**ORDER DENYING MOTION FOR SUMMARY JUDGMENT**

Plaintiff Jaconiah Fields, an Indiana inmate, brought this civil rights action alleging that the defendants violated his Eighth Amendment rights by using excessive force against him. The defendants have moved for summary judgment, arguing that Mr. Fields failed to exhaust his available administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), before filing this lawsuit. Because the designated evidence shows that administrative remedies were rendered unavailable when a grievance officer rejected Mr. Fields' grievance as untimely without good cause but failed to instruct him on how to cure the deficiency, the defendants' motion for summary judgment, dkt. [24], is **denied**.

**I. Summary Judgment Standard**

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party must inform the court "of the basis for its motion" and specify evidence demonstrating "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the

nonmoving party must "go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324.

In ruling on a motion for summary judgment, the Court views the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *See O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has repeatedly assured the district courts that they are not required to "scour every inch of the record" for evidence that is potentially relevant to the summary judgment motion before them. *Grant v. Trustees of Ind. Univ.,* 870 F.3d 562, 573-74 (7th Cir. 2017).

A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## II. Exhaustion Standard

On a motion for summary judgment, "[t]he applicable substantive law will dictate which facts are material." *National Soffit & Escutcheons, Inc., v. Superior Systems, Inc.,* 98 F.3d 262, 265 (7th Cir. 1996) (citing *Anderson,* 477 U.S. at 248). The substantive law applicable to this motion for summary judgment is the PLRA, which requires that a prisoner exhaust available administrative remedies before bringing a suit concerning prison conditions. 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they

involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle,* 534 U.S. 516, 532 (2002) (citation omitted).

"Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo,* 548 U.S. 81, 90-91 (2006) (footnote omitted); *see also Dale v. Lappin,* 376 F.3d 652, 655 (7th Cir. 2004) ("In order to properly exhaust, a prisoner must submit inmate complaints and appeals 'in the place, and at the time, the prison's administrative rules require.'") (quoting *Pozo v. McCaughtry,* 286 F.3d 1022, 1025 (7th Cir. 2002)). "In order to exhaust administrative remedies, a prisoner must take all steps prescribed by the prison's grievance system." *Ford v. Johnson,* 362 F.3d 395, 397 (7th Cir. 2004).

As the party asserting the exhaustion defense, the defendants bear the burden of establishing that the administrative remedies upon which they rely were available to the plaintiff. *See Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015) ("Because exhaustion is an affirmative defense, the defendants must establish that an administrative remedy was available and that [the plaintiff] failed to pursue it."). "[T]he ordinary meaning of the word 'available' is 'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.'" *Ross v. Blake,* 136 S. Ct. 1850, 1858 (2016) (internal quotation omitted).

"[A]n inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Id.* at 1859 (internal quotation omitted). An administrative procedure is unavailable when 1) the process operates as a "simple dead end," 2) when it is so opaque that it is incapable of use, and 3) when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id*. at 1859-60.

### III. Facts

While housed at Pendleton Correctional Facility (Pendleton) on September 13, 2019, Mr. Fields started feeling dizzy and told another inmate to call for medical assistance.[1] Mr. Fields allegedly passed out from the heat. When he regained consciousness, he was maced in the face and mouth by Officer Martz. Then Officers Bagienski, Nieman, and Vandine allegedly used excessive force against Mr. Fields when they placed him in handcuffs and slammed him down hard on the floor causing injuries including a broken left hand, swollen left knee, swollen right hand, and sore right shoulder. Officer Martz refused to provide a cold-water shower even though Mr. Fields complained that the warm water intensified the burning of his skin. Dkt. 2 at 8-9.

At all times relevant to Mr. Fields' complaint, IDOC maintained a grievance policy that required inmates to complete three steps before filing a lawsuit: 1) file a formal grievance within 10 business days of the alleged event if informal attempts to resolve the issue fail; 2) appeal to the Warden or his designee; and 3) appeal to the Department Grievance Manager. Dkt. 24-2 at 8-13. The grievance policy further states:

> The Offender Grievance Specialist may reject the grievance form and return it to the offender unfiled if . . . it was not submitted within the ten (10) business day time limit or is grieving a matter inappropriate to the offender grievance process (Section IV, B). . . The Offender Grievance Specialist has the discretion to consider a grievance that does not conform to the rules if there is good cause for the violation. An example of good cause is an inability to comply for reasons outside of the offender's control. If the Offender Grievance Specialist determines from a review of the grievance form that it does not meet the requirements of this policy and administrative procedure and there is no good cause shown, the Offender Grievance Specialist shall return the grievance form within one (1) business day to the offender **with an explanation as to why the form was returned and how it may be corrected**. . . It shall be the responsibility of the offender to make the necessary

---

[1] Defendants' statement of undisputed material facts incorrectly states that the alleged events occurred on June 25, 2019. Dkt. 25 at 2. Defendants' reply further incorrectly states the date as September 1, 2019. Dkt. 28 at 1. Although the occasional typo is inevitable, misstating a relevant date when arguing that a plaintiff failed to timely exhaust his administrative remedies is troubling. Counsel for defendants is cautioned to make additional efforts to ensure that statements of undisputed material facts do not contain such errors in the future.

>revisions to the grievance form and to return the revised form to the Offender Grievance Specialist within five (5) business days from the date that it is returned to the offender.

Dkt. 24-2 at 10 (emphasis supplied).

On September 13, 2019, Mr. Fields submitted several requests for interview forms to the defendants to attempt to informally resolve his complaint. Dkt. 24-4. When he was not satisfied by the responses he received, he completed a formal grievance on September 29, 2019. Dkt. 24-5 at 2. This was more than ten business days after the alleged events occurred.

Mr. Fields was prevented from submitting a timely grievance because his unit was on lockdown from September 25 to September 29, 2019. Fields Affidavit, dkt. 30-1. However, his grievance did not indicate that he had been prevented from filing the grievance on time due to the lockdown.

Grievance Officer Christina Conyers rejected Mr. Fields' grievance as untimely and outside the scope of the grievance process. As to the question of timeliness, the return of grievance form stated: "You have submitted the form too late and have not shown any good reason for the delay. Grievance forms must be submitted within the time limits set out in Policy and Administrative Procedure 00-02-301." Dkt. 24-5 at 1. It further stated: "You have 10 business days from date of incident. Incident occurred on 9/13/19, out of time frame." *Id*. Finally the form stated: "Staff discipline, staff assignment, staff duties and/or staff training are not part of the grievance process." *Id*. The return of grievance form did not explain how Mr. Fields could correct these deficiencies. Mr. Fields did not submit any additional grievance forms about the September 13, 2019, incident.

## IV. Analysis

The defendants seek summary judgment on the grounds that Mr. Fields failed to file a timely formal grievance. There is no dispute that Mr. Fields did not exhaust the grievance process

after his formal grievance was rejected. However, the evidence also shows beyond dispute that the process was not "available" to Mr. Fields.

Mr. Fields submitted his formal grievance a few days beyond the 10-business-day time limit. Had the grievance specialist followed the grievance policy and informed Mr. Fields that he had 5 business days to refile his grievance if he could 1) show good cause for its untimeliness, and 2) eliminate his request for a remedy outside the scope of the grievance process, Mr. Fields could have complied and continued to exhaust the grievance process. The grievance specialist's failure to comply with the grievance policy rendered the process unavailable to Mr. Fields because he had no other means of knowing how to proceed after the return of his formal grievance.

Section XIV of the grievance policy is titled "TIME LIMIT EXTENSIONS." But none of its provisions seem to apply in this situation. The first section states:

> If there are extenuating circumstances which caused the offender a delay in submitting the grievance form within the time frames, the offender must document and submit the reason for the delay on a separate piece of paper with signature and date, and include with the appropriate appeal form or make a request for the specific form to the Offender Grievance Specialist for review.

Dkt. 24-2 at 13.[2]

This passage appears to only apply to the appeals process as the inmate must include documentation for the reason for his delay "with the appropriate appeal form." *Id.* It does not clearly convey that an inmate who misses the deadline to file a formal grievance must attempt to file the grievance late with proof of good cause for the delay. The Court cannot "discern or navigate" this section of the grievance policy and would not expect an "ordinary prisoner" to do any better. *Ross*, 136 S. Ct. at 1859. The Court finds this provision of the grievance policy "so

---

[2] The remaining provisions of Section XIV relate to extensions initiated by the Warden or other prison officials. Dkt. 24-2 at 13-14.

opaque" that it is, "practically speaking, incapable of use." *Id.; see also Goubeaux v. Davis*, 2020 WL 2396008, at *4 (S.D. Ind. May 12, 2020).

Furthermore, Section VI of the grievance policy, titled "REMEDIES," states that "No grievance shall be rejected because an offender seeks an improper or unavailable remedy, except that a grievance shall be rejected if the offender seeks a remedy to a matter that is inappropriate to the grievance process." Dkt. 24-2 at 6. The grievance officer returned Mr. Fields' grievance because it sought an unavailable remedy—staff discipline. But the grievance itself was not about staff discipline. It was about excessive force. In other words, the remedy sought was unavailable, but the matter being grieved was not inappropriate to the grievance process.

The denial of Mr. Fields' grievance on this ground also appears to be in violation of the grievance policy. When prison administrators thwart inmates from taking advantage of a grievance process through misrepresentation, they have made the process unavailable. *Ross,* 136 S. Ct. at 1860. Rejecting the grievance when it should have been accepted is a misrepresentation that thwarted Mr. Fields' attempt to grieve.

## V. Conclusion and Further Proceedings

"Because exhaustion is an affirmative defense, the defendants must establish that an administrative remedy was available and that [the plaintiff] failed to pursue it." *Thomas*, 787 F.3d at 847. For the reasons discussed in Part IV above, the defendants have failed to establish that the grievance process was available to Mr. Fields. Their motion for summary judgment, dkt. [24], is therefore **denied**.

Additionally, as noted above, the record supports the conclusion that the grievance process was not available to Mr. Fields. The Court previously issued the following warning to the defendants:

> [I]f the defendants file a dispositive motion, they must remember that it is their burden to prove both that the administrative remedy process was available to the plaintiff and that he or she failed to utilize it. *See Thomas v. Reese*, 787 F.3d 845, 848 (7th Cir. 2015); *Kaba v. Stepp*, 458 F.3d 678, 686 (7th Cir. 2006). Thus, if the plaintiff responds with evidence that the administrative remedy process was unavailable, the defendants may and should consider whether selecting one of the other two options outlined above is the appropriate course—that is, conceding that a *Pavey* hearing is necessary or withdrawing their affirmative defense. Alternatively, the defendants' reply must directly confront the plaintiff's evidence regarding availability and explain why they remain entitled to summary judgment despite that evidence. *Failure to present responsive evidence in reply will result in a forfeiture of any right to present that evidence if there is a future* Pavey *hearing.*

Dkt. 22 (emphasis added). In failing to present responsive evidence regarding Mr. Fields' access to the grievance process, the defendants have forfeited their right to do so at a *Pavey* hearing. The factual record shows that the grievance process was unavailable to Mr. Fields, and that record will not change.

Accordingly, the Court notifies the defendants of its intent to grant summary judgment in Mr. Fields' favor on the exhaustion defense. The defendants shall have **through November 5, 2021**, to respond to the Court's proposal and either (a) show cause why summary judgment should not be entered in Mr. Fields' favor, or (b) withdraw their affirmative defense of exhaustion.

**IT IS SO ORDERED.**

Date: 10/13/2021

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

JACONIAH FIELDS
111749
PENDLETON - CF
PENDLETON CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

Benjamin Charles Wade
INDIANA ATTORNEY GENERAL
ben.wade@atg.in.gov