UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JACONIAH FIELDS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:20-cv-02455-JMS-MPB |
| | ) | |
| ANDREW BAGIENSKI, et al. | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT**

Plaintiff Jaconiah Fields, an Indiana inmate, brought this civil rights action alleging that the defendants violated his Eighth Amendment rights by using excessive force against him. Mr. Fields and two of the four defendants have moved for summary judgment. For the reasons below, both motions for summary judgment, dkt. [60] and dkt. [67], are **DENIED**.

**I.
Standard of Review**

Parties in a civil dispute may move for summary judgment, which is a way of resolving a case short of a trial. *See* Fed. R. Civ. P. 56(a). Summary judgment is appropriate when there is no genuine dispute as to any of the material facts, and the moving party is entitled to judgment as a matter of law. *Id.*; *Pack v. Middlebury Comm. Sch.*, 990 F.3d 1013, 1017 (7th Cir. 2021). A "genuine dispute" exists when a reasonable factfinder could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Material facts" are those that might affect the outcome of the suit. *Id.*

When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572-73 (7th Cir. 2021). It cannot weigh evidence or

make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The Court is only required to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it is not required to "scour every inch of the record" for evidence that is potentially relevant. *Grant v. Tr. of Ind. Univ.*, 870 F.3d 562, 573-74 (7th Cir. 2017).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325.

When reviewing cross-motions for summary judgment, all reasonable inferences are drawn in favor of the party against whom the motion at issue was made. *Valenti v. Lawson*, 889 F.3d 427, 429 (7th Cir. 2018) (citing *Tripp v. Scholz*, 872 F.3d 857, 862 (7th Cir. 2017)). The existence of cross-motions for summary judgment does not imply that there are no genuine issues of material fact. *R.J. Corman Derailment Servs., LLC v. Int'l Union of Operating Engineers, Local Union 150, AFL-CIO*, 335 F.3d 643, 647 (7th Cir. 2003).

## II.
## Factual Background

The parties have filed cross-motions for summary judgment, so the Court takes the motions "one at a time." *American Family Mut. Ins. v. Williams*, 832 F.3d 645, 648 (7th Cir. 2016). For each motion, the Court views and recites the evidence and draws all reasonable inferences "in

2

favor of the non-moving party." *Id.* The parties' differing versions of the events of September 13, 2019, reveal several disputes of material fact.

According to Mr. Fields, he passed out in his cell due to the heat, and when he awoke the four defendants were in his cell. Fields Deposition, dkt. 67-1 at 17, 20.[1] Because he didn't know what was going on, he began to scoot away from the officers. *Id.* at 19. Defendant Martz sprayed him in the face with mace. *Id.* at 18. Because he had mace in his eyes, he could not see which officer or officers turned him over and cuffed his hands behind his back. *Id.* at 23-24. Then, the four defendants escorted him to medical, with two officers on either side of him. *Id.* at 25-26. Along the way, the officers lifted him up and slammed him on the ground on his back and his restrained hands. The move was initiated by defendant Vandine, but the "other officers" participated in lifting him up and slamming him to the ground. *Id.* at 27-28. As a result, Mr. Fields' hand was injured. *Id.* at 29-30.

According to the defendants, Correctional Officer Tyler, who is not a defendant in this action, found Mr. Fields unresponsive in his cell and signaled for emergency medical help. Dkt. 67-3. Defendants Bagienski, Vandine, and Martz responded to the call. They attempted to apply handcuffs to Mr. Fields to escort him to medical, but defendant Martz deployed O/C spray (mace) when Mr. Fields began backing up and kicking. Dkt. 67-4. Once they gained his compliance, they escorted him to medical. *Id.* At that point, defendant Nieman arrived and placed his hand on another officer who is not a defendant in this action. Dkt. 67-5. Mr. Fields was cleared by a nurse, given a shower, and returned to his cell.

---

[1] The deposition transcript filed with the court as a .pdf document has an un-numbered cover page which was designated as page one by the Court's electronic docketing system. Thus, the page numbers that were pre-printed at the top of each transcript page differ by one from the court-assigned page numbers. The Court refers to the .pdf page numbers assigned by the Court's electronic docketing system throughout this Order.

## III.
## Discussion

The Eighth Amendment protects prisoners from excessive physical force amounting to cruel and unusual punishment. *Wilkins v. Gaddy*, 559 U.S. 34 (2010). The "core judicial inquiry" in excessive force claims is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* at 37. Defendants Martz and Vandine have not moved for summary judgment.

### A. Defendants' Motion for Summary Judgment

#### 1. Excessive Force

Defendants Bagienski and Nieman argue that they are entitled to summary judgment because there is no evidence that they made any physical contact with Mr. Fields or applied any force at all. Dkt. 68 at 6.

But the defendants base this assertion on the evidence viewed in the light most favorable to them, while ignoring Mr. Fields' deposition testimony. Defendant Bagienski's use of force report does not indicate that he applied any force to Mr. Fields. Dkt. 67-4. And Defendant Nieman's use of force report states that he was not present in Mr. Fields' cell when defendant Vandine deployed mace and that he placed his hand on Officer Conlin's shoulder as Officer Conlin and the other defendants escorted Mr. Fields to medical. Dkt. 67-5.

But Mr. Fields testified at his deposition that all four defendants were in his cell when he regained consciousness, just before defendant Vandine maced him:

Q: And what were the four officers that were in your cell when you came to?

A: The defendants that is [sic] on the Complaint.

Q: So you're referring to Sergeant Vandine, Bagienski, Martz, and Nieman?

A: Yes.

4

Dkt. 67-1 at 20. Furthermore, Mr. Fields testified that the four defendants escorted him to medical:

> Q: Who escorted you out?
>
> A: All – I mean, I can't pronounce his name. It starts with a "B." I ain't even going to try it.
>
> But Martz, Vandine –
>
> Q: Bagienski?
>
> A: Yeah. That.
>
> Q: Okay.
>
> A. And the other officer that's the defendant.

Dkt. 67-1 at 25. Finally, Mr. Fields testified that the four defendants participated in slamming him to the ground on the way to medical: "They – they lift me up. But Vandine's the one aggressively initiated the grab because he – he tightened his grip and he lift me up, along with the other officers, and slammed me down on my back." *Id*. at 27.

Viewing the evidence in the light most favorable to Mr. Fields, a reasonable jury could conclude that defendants Bagienski and Neiman used excessive force against Mr. Fields.[2] For these reasons, defendants Bagienski and Neiman are not entitled to summary judgment on Mr. Fields' Eighth Amendment claims.

### 2. Qualified Immunity

Defendants Bagienski and Neiman also argue that they are entitled to judgment as a matter of law based on qualified immunity. "Qualified immunity attaches when an official's conduct does

---

[2] Even if defendants Bagienski and Neiman did not use excessive force against Mr. Fields, they may be liable under § 1983 for failing to take reasonable steps to stop the use of excessive force by fellow officers. *Miller v. Smith*, 220 F.3d 491, 495 (7th Cir.2000) (allowing failure to intervene theory to proceed in excessive force case despite not being explicitly pled in the complaint; although "a plaintiff must establish a defendant's personal responsibility for any claimed deprivation of a constitutional right, a defendant's direct participation in the deprivation is not required").

5

not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *White v. Pauly,* 137 S.Ct. 548, 551 (2017) (citation omitted) (internal quotation marks omitted). "[T]wo central questions must be addressed in the course of determining whether qualified immunity is available: whether the plaintiff has alleged a deprivation of a constitutional right at all, and whether the right at issue was clearly established at the time and under the circumstances presented." *Bianchi v. McQueen,* 818 F.3d 309, 319 (7th Cir. 2016) (citation omitted).

To make a qualified immunity determination, the Court must "(1) determine whether the plaintiff has alleged the deprivation of an actual constitutional right and (2) if so, determine whether that right was clearly established at the time of the alleged violation." *Sparing v. Village of Olympia Fields,* 266 F.3d 685, 688 (7th Cir. 2001) (*citing Saucier v. Katz*, 533 U.S. 194 (2001) (citations omitted)). Once raised, the plaintiff, not the defendant, carries the burden of overcoming the affirmative defense. *Sparing*, 266 F.3d at 688 (*citing Spiegel v. Cortese*, 196 F. 3d 717 (7th Cir. 1999).

The Court has already determined that a reasonable jury that believed Mr. Fields' version of the events may find that the defendants used excessive force against him. To determine if the defendants are entitled to qualified immunity, therefore, the Court must determine whether his right to be free of this use of excessive force was clearly established. This analysis must follow the Supreme Court's rulings. In this regard, *Mullenix v. Luna,* 136 S.Ct. 305 (2015) is instructive. The Supreme Court explained:

> A clearly established right is one that is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards,* 566 U.S. ——, ——, 132 S.Ct. 2088, 2093, 182 L.Ed.2d 985 (2012) (internal quotation marks and alteration omitted). "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al–Kidd,* 563 U.S. 731, 741, 131 S.Ct. 2074,

6

> 179 L.Ed.2d 1149 (2011). Put simply, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).
>
> "We have repeatedly told courts ... not to define clearly established law at a high level of generality." *al–Kidd, supra,* at 742, 131 S.Ct. 2074. The dispositive question is "whether the violative nature of *particular* conduct is clearly established." *Ibid.* (emphasis added). This inquiry "'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Brosseau v. Haugen,* 543 U.S. 194, 198, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004) (*per curiam*) (quoting *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)).

*Mullenix*, 136 S. Ct. at 308.

Defendants Nieman and Bagienski's qualified immunity argument is based on their incorrect assertion that Mr. Fields' limited his allegations to Sgt. Martz's use of mace and Sgt. Vandine slamming him to the ground. They alternatively argue that any force applied was applied in good faith to gain Mr. Fields' compliance with orders. As discussed above, Mr. Fields testified at his deposition that the four defendants participated in slamming him to the ground on his restrained hands as he walked to medical. It is clearly established that "[t]he Eighth Amendment prohibits unnecessary and wanton infliction of pain, thus forbidding punishment that is 'so totally without penological justification that it results in the gratuitous infliction of suffering.'" *Leiser v. Kloth*, 933 F.3d 696, 703 (7th Cir. 2019) (quoting *Calhoun v. DeTella*, 319 F.3d 936, 939 (7th Cir. 2003), quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). Only a plainly incompetent correctional officer would think it was constitutional to slam a cooperating inmate to the ground on top of his restrained hands.

Because it was clearly established that it is unconstitutional to gratuitously inflict pain on an inmate without penological justification, and because a genuine issue of fact remains as to whether defendants Nieman and Bagienski participated in the alleged force or failed to take

reasonable steps to stop other officers' use of excessive force, defendants Bagienski and Neiman are not entitled to qualified immunity at summary judgment.

### B. Mr. Fields' Motion for Summary Judgment

As discussed above, the parties dispute the basic facts regarding the use of force against Mr. Fields. Viewing the evidence in the light most favorable to the defendants, a reasonable jury could conclude that the use of mace by defendant Vandine was a good-faith effort to maintain or restore discipline and that no other use of force occurred. Therefore, Mr. Fields is not entitled to summary judgment.

### IV. Conclusion

The plaintiff's motion for summary judgment, dkt. [60], and defendants Nieman and Bagienski's motion for summary judgment, dkt. [67], are **DENIED**.

Because it is the Court's preference that the plaintiff be represented by counsel for trial or any potential settlement conference, the Court will attempt to recruit counsel to represent the plaintiff. The plaintiff shall have **through November 10, 2022,** in which to file a motion for recruitment of counsel or object to the recruitment of counsel on his behalf. **The clerk is directed** to include the motion for counsel form with the plaintiff's copy of this Order.

Once counsel has appeared for the plaintiff, **the Magistrate Judge is requested** to set a status conference to discuss what further development is needed before trial and to schedule a settlement conference.

**IT IS SO ORDERED.**

Date: 10/19/2022

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

JACONIAH FIELDS
111749
PENDLETON - CF
PENDLETON CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

Erica Lee Sawyer
INDIANA ATTORNEY GENERAL
Erica.Sawyer@atg.in.gov